UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT REEVES,

        Plaintiff,                            Civil Action No. 11-cv-11830

      v.                                     District Judge Marianne O. Battani
                                              Magistrate Judge Laurie J. Michelson

K. SALISBURY, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [16]**

Plaintiff Robert Reeves, a Michigan Department of Corrections ("MDOC") inmate proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that six MDOC employees, Assistant Deputy Warden Chapman, Kenneth Salisbury, Janet Belen, L. Jacobsen, Mark Evers and Richard Enders ("Defendants"), violated his First, Fifth, Eighth and Fourteenth Amendment rights by writing misconduct tickets against him in retaliation for a complaint he filed with the Warden's Forum.[1] All pretrial matters have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 15.) Presently before the Court are Defendants Salisbury, Belen, Evers and Enders' Motion for Summary Judgment. (Dkt 16.)

For the following reasons, the Court RECOMMENDS that Defendants' Motion for Summary Judgment (Dkt. 16) be GRANTED in part and DENIED in part. Specifically, the Court RECOMMENDS that the Motion be granted as to Plaintiff's Eighth Amendment Claims but denied as to the remaining claims.

---

[1] The District Court dismissed Defendants Chapman and Jacobsen on June 23, 2011. (Dkt. 6, Order Partial Dismissal.)

**I. FACTS**

Plaintiff is currently an inmate at the Carson City Correctional Facility ("DRF") in Carson City, Michigan. (Dkt 16, Defs.' Mot. Summ. J. at 1.) Plaintiff claims his rights were violated while incarcerated at a different MDOC facility – the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan. (*Id*.)

On November 24, 2009, Plaintiff submitted a written complaint to the Warden's Forum alleging that ARF staff were unfairly accusing him of misconduct. (Dkt. 1, Pl.'s Compl. at Ex. A.) Subsequently, on December 7, 2009, Defendant Belen wrote a Major Misconduct Report for "Creating a Disturbance" ("Belen Misconduct Report") stating that Plaintiff led about 30-45 prisoners in "grouping up in pairs of 3 and started circling the front yard." (*Id*. at Ex. G.) Defendant Belen wrote that "[t]he walk was intended to lure staff in for patsearches and they would then be stabbed." (*Id*.) According to Plaintiff, Inspector Belen placed him in segregation as a result of this misconduct. (*Id*. at 7.) However, on December 8, 2009, Plaintiff complained to Assistant Deputy Warden ("ADW") Chapman about the report, and that same day "[t]he ticket was pulled and [Plaintiff] was released from segregation." (*Id*.)

A few days later, on December 11, 2009, Defendant Evers placed Plaintiff back in segregation for being "Out of Place." (Dkt. 1, Pl.'s Compl. at 7 and Ex. H.) The Major Misconduct Report regarding this incident states that Plaintiff was on "toplock,"[2] and violated this sanction by being in the yard. (*Id*.) The Hearing Officer upheld this charge. (*Id*.) In addition, on December 16, 2009, Defendant Salisbury gave Plaintiff a Major Misconduct ticket for "Conspiracy Assault and

---

[2] "Toplock" is a sanction restricting a prisoner's activity and movement. *See* www.michigan.gov/corrections.

2

Battery (staff victim)" that was very similar to Plaintiff's "Creating a Disturbance" ticket. (*Id.* at 7 and Ex. G.) Defendant Salisbury allegedly wrote the report based on "confidential statement(s)." (*Id.* at Ex. G.) Defendant Salisbury wrote:

> It is alleged on December 05, 2009, at or near 1930 hours, Prisoner Reeves 222810, met on the inner yard with several other prisoners. During this meeting, Prisoner Reeves and the other participants discussed obtaining knives and stabbing several staff members at the facility. The participants of this meeting then took a vote amongst themselves and determined they would stab several staff. The following day (December 6, 2009) Prisoner Reeves participated in a walk on the inner yard with approximately forty other prisoners. The walk was intended to lure staff in for patsearches and they would then be stabbed. According to statement(s) received, staff did not respond as planned and therefore the assaults did not occur.

(*Id.* at Ex. G.)

Hearing Officer Jacobsen conducted a hearing regarding the "Conspiracy Assault and Battery" Misconduct Report ("Salisbury Misconduct Report") on December 21and 22, 2009. (Dkt. 1, Pl.'s Compl. at Ex. G.) On December 21, 2009, Hearing Officer Jacobsen adjourned the hearing due to lack of evidence. (*Id.*) On December 22, 2009, Hearing Officer Jacobsen found "evidence sufficient to support [that the] prisoner took steps to abuse/injure staff." (*Id.*) Hearing Officer Jacobsen wrote that he made these findings based upon the following:

> (1) there is testimony this prisoner met with others on the yard on 12/5 to plan a march/walk to lure staff into stopping this action to then assault them; (2) on 12/6 there was a march/walk on the yard with numerous prisoners grouped together; (3) a list of those involved includes prisoner's name as the first name on that list; (4) a unit officer whom indicates he know[s] Reeves from being in his unit pointed prisoner out in video; (5) per the video, this hearing officer concurs it is Reeves; (6) prisoner admits he was on the yard walking.

(*Id.*)

Plaintiff filed Grievance ARF 2010-01-0084-07E on January 6, 2010. (Dkt. 16, Def.s' Mot.

Summ. J. at Ex. E.)  In that grievance, Plaintiff claims he requested "his documents" from his hearing from the "regular H/I" and did not receive them.  (*Id*.) Chapman denied the grievance at Step I indicating that Plaintiff had "received all copies of the packets that he was allowed to that was not marked confidential by the Hearing Officer."  (*Id*.)

Plaintiff filed a Step II grievance on January 20, 2010, claiming that the packets he received were not complete.  (*Id*.)  Plaintiff specifically indicated that the statements from staff members King, Defendant Enders and Defendant Evers were missing.  (*Id*.)  ARF upheld its Step I response on January 25, 2010.  (*Id*.) Plaintiff filed a Step III grievance.  (*Id*.)  In response, ARF upheld its Step II decision.  (*Id*.)

Plaintiff concomitantly appealed Hearing Officer Jacobsen's administrative decision regarding Salisbury's Misconduct Report to Hearing Administrator Richard Stapleton on January 4, 2010.  (Dkt. 1., Pl.'s Compl. at 8.)  Hearing Administrator Stapleton denied the appeal on February 1, 2010.  (*Id*.)  Subsequently, Plaintiff petitioned the Ingham County Circuit Court for judicial review.  (*Id*.)  On December 6, 2010, Judge Giddings of that  Court reviewed record regarding Salisbury's Misconduct Report and found that "[t]he agency's guilty finding on the major misconduct Attempt – Assault and Battery is not supported by competent, material and substantial evidence on the whole record."  (Dkt. 1, Pl.'s Compl. at Ex. B.)  Judge Giddings wrote the following:

> The Court was supplied with the confidential portion of the record. After carefully reviewing those documents, it is clear that the misconduct cannot be sustained.  First, based on "confidential statements" the ticket recites that it is "alleged" that on December 5, 2009, Reeves met and discussed with other prisoners 'obtaining knives and stabbing several staff.'  In his 'REASONS FOR FINDINGS,' the hearing officer states that there is 'testimony this prisoner met with others on the yard on 12/5 to plan a march/walk to

4

> lure staff into stopping this action to then assault them.' That is simply untrue.
>
> The record contains no such 'testimony.' Other than the statement on the face of the ticket, there is not one mention anywhere in the public or confidential part of the record of any meeting on December 5, 2009. That is important because the author of the ticket did not observe any meeting and called it an 'alleged' meeting 'based on confidential statements.' The hearing officer acknowledges that there is no video of any meeting on December 5, 2009.

(*Id.*)

This is only one example of the inaccuracies Judge Giddings found in the record. (*Id.*) He also found that the record did not contain any evidence that Plaintiff was involved in the alleged "meeting of December 6, 2009." (*Id.*) Judge Giddings further found that Hearing Officer Jacobsen ignored important facts. (*Id.*)

After receiving Judge Giddings' Order Reversing Agency Decision, Plaintiff filed Grievance ARF 2011-01-0052-28C. (Dkt. 1, Pl.'s Compl. at Ex. D.) In that grievance, Plaintiff claims that Defendant Salisbury, Evers and Enders violated his constitutional rights to due process and retaliated against him in violation of the First Amendment for his November 24, 2009 Warden Forum Complaint by writing the Major Misconduct Tickets for Creating a Disturbance, Out of Place and Conspiracy Assault and Battery. (*Id.*) ARF denied the grievance at Step I indicating that it contained "multiple issues" and per policy grievances must contain "one (1) issue." (*Id.*)

Plaintiff filed a Step II grievance on February 1, 2011, stating that "[a]ll actions stated in this complaint derived out of the same incident." (*Id.*) ARF upheld its Step I response on February 2, 2011. (*Id.*)

Plaintiff filed a Step III grievance. (*Id.*) In response, on March 4, 2011, ARF rejected the grievance and stated: "Also, the grievant exhausted his administrative remedies through the major

misconduct appeals process. The grievant also filed a complaint in the Ingham County Circuit Court." (*Id.*) Plaintiff filed this suit on April 26, 2011. (Dkt. 1, Compl.)

## II. ANALYSIS

### A. Legal Standards

#### 1. *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### B. Plaintiff Exhausted his Administrative Remedies

The failure to exhaust is an affirmative defense to a civil suit brought by a prisoner. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918-19. The exhaustion prerequisite applies to all inmate suits about prison life—regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, a prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) ("Policy Directive") sets forth the procedures that govern the grievances filed by Plaintiff. (Dkt. 16, Def.s' Mot. Summ. J. at A.) The Policy Directive provides that a grievance may be rejected if it is "vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." (*Id*. at ¶ G.1.) The Policy Directive also provides that the grievance must include "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id*. at ¶ R.) Notably, there are some instances where the failure to specifically name defendants in the grievance process may not result in dismissal for failure to exhaust. *Reed-Bey v. Pramstaller*, 603

F.3d 322 (6th Cir. 2010); *Hall v. Raja*, 2010 U.S. Dist. LEXIS 77651 at *3-10 (E.D. Mich. 2010). "Although the Michigan Department of Corrections' (MDOC) policy requires a grievance to include specific names, those requirements are relaxed when the purpose of the grievance has been achieved." *Hall*, 2010 U.S. Dist. LEXIS 77651 at *8-9.

As stated above, Plaintiff filed two grievances regarding the facts relevant to this case: Grievance ARF 2010-01-0084-07F and Grievance ARF 2011-01-0052-28C. In Grievance ARF 2010-01-0084-07F, Plaintiff requested "his documents" from his hearing from the "regular H/I." (Dkt. 16, Def.s' Mot. Summ. J. at Ex. E.) Plaintiff alleges that the "regular H/I" or Hearings Inspector was Defendant Belen. (Dkt. 1, Pl's' Compl. at 5.) In ADW Chapman's response to this grievance, he indicates that "[t]he H/I made copies of the Out of Place and sent the copies to him." (Dkt. 16, Def.s' Mot. Summ. J. at Ex. E.) Therefore, ADW Chapman clearly found Plaintiff's grievance sufficient to identify the involvement of Defendant Belen. (*Id*.) ADW Chapman also addressed the grievance on the merits. (*Id*.) Plaintiff appealed this grievance to Step III as required by policy. As such, Plaintiff's due process allegations are exhausted as to Defendant Belen.

In Grievance ARF 2011-01-0052-28C, Plaintiff claims that Defendants Salisbury, Evers and Enders violated his constitutional rights to due process and retaliated against him for his November 24, 2009 Warden Forum Complaint by writing the Major Misconduct Tickets for Creating a Disturbance, Out of Place and Conspiracy Assault and Battery. (Dkt. 1, Pl.'s Compl. at Ex. D.) ARF denied the grievance at Step I indicating that it contained "multiple issues" and per policy grievances must contain "one (1) issue." (*Id*.) Plaintiff appealed this grievance through Step III. (*Id*.)

Defendants argue that Plaintiff did not sufficiently exhaust his administrative remedy

8

because "Reeves appealed the rejection of his grievance through all three steps of the grievance process, instead of re-filing single issue grievances." (Dkt. 16, Def.'s Mot. Summ. J. at 7.) Defendant also quotes *Burnett v. Howard*, No. 09-cv-37, 2010 U.S. Dist. LEXIS 30499 at *3 (W.D. Mich. March 30, 2010), for the proposition that: "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." This is a true statement, but the Court is not required to blindly accept the state's application of the procedural rule. The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that the failure to "properly" exhaust bars suit in federal court. Proper exhaustion of administrative remedies means "using all steps that the agency holds out, and doing so properly." *Id.* at 90.

The MDOC policy prohibits grievances with "multiple *unrelated* issues." Not surprisingly, therefore, a review of federal cases addressing prisoner grievances containing multiple issues reveals that a prisoner "properly" exhausts where the multiple issues are related or the grievance really involves one claim and multiple harms. *LaFountain v. Martin*, 334 F. App'x. 738, 741 (6th Cir. June 3, 2009). On the other hand, if the grievance contains two completely unrelated issues, it is not proper. *Rusiecki v. Trombley*, 06-cv-14023, 2007 U.S. LEXIS 99733, at *16 (E.D. Mich. Nov. 30 2007); *Crump v. Caruso*, No. 09-cv-194, 2010 U.S. Dist. LEXIS 97492, at *9 (W.D. Mich. Sept. 17, 2010). For example, in *Rusiecki v. Trombley*, Magistrate Judge Charles Binder stated that Plaintiff's grievance was properly rejected for containing multiple issues when the grievance contained a complaint regarding legal mail and a completely unrelated complaint about a failed monetary disbursement. *Rusiecki*, 2007 U.S. LEXIS 99733, at *16. Likewise, a grievance that

9

"addressed not only a claim regarding [the prisoner's] lost property, but also claims regarding arbitrary punishment, deliberate indifference to medical needs, improper assignment to a smoking unit, and arbitrary refusal to allow [the prisoner] to see the quartermaster" was properly rejected for containing multiple unrelated issues. *Crump v. Caruso*, 2010 U.S. Dist. LEXIS 97492, at *9. However, in *LaFountain*, the Sixth Circuit held that a grievance that contained complaints about a prisoner being accosted in the bathroom and having his cell robbed was not properly rejected for containing multiple issues. *LaFountain*, 334 Fed. Appx. at 741. The Sixth Circuit reasoned that the grievance was really one claim of retaliation by an MDOC employee that labeled the prisoner a "snitch and a sexual predator" that resulted in multiple harms: "The hostile action that LaFountain claims to have suffered as a result of being labeled a snitch and a sexual predator, such as being accosted in the bathroom and having his cell robbed, is merely the harm he suffered as a result of the alleged retaliation." *Id*. (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Applying this case law, Plaintiff's case is more akin to *LaFountain*. Grievance ARF 2011-01-0052-28C does not contain unrelated issues similar to *Rusiecki* or *Crump*. It contains multiple harms stemming from one incident of alleged retaliation. This incident is the alleged "march" that Plaintiff claims the Defendants fabricated against him in retaliation for filing his November 24, 2009 Warden Forum Complaint. This incident formed the basis of the allegedly false Major Misconduct Tickets written by Defendant Salisbury, Belen and Evers, and the allegedly false testimony provided at Plaintiff's Major Misconduct Hearing on the Conspiracy Assault and Battery provided by Defendant Enders. As such, Plaintiff properly exhausted his administrative remedies.

### C. Plaintiff has Established a Genuine Issue of Material Fact as to his First Amendment Retaliation Claims

A First Amendment retaliation claim essentially consists of three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).

Defendants do not dispute that Plaintiff engaged in protected conduct by complaining on November 24, 2009 to the Warden's Forum. (Dkt. 16, Def.s' Mot. Summ. J. at 9.) Defendants also do not dispute that Major Misconduct Tickets are adverse actions "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Id.*; *Thaddeus*, 175 F.3d at 394. Thus, the Court will focus on the remaining causation element.

Defendants argue that Plaintiff's claim fails on the causation element because they had no knowledge of the protected conduct. (Dkt. 16, Def.'s Mot. Summ. J. at 10, Exs. I, J and K.) In support of this argument, Defendants submit their own affidavits. (*Id.*) Plaintiff, however, has alleged facts that cast doubt on Defendants' intent and whether or not they had knowledge of Plaintiff's complaint. (Dkt. 1, Pl.'s Compl. at 7.) For example, Plaintiff alleges that Defendant Salisbury did not work the night of the alleged march or "witness anything written in [his] report." (*Id.*) This claim is verified by the December 6, 2010 decision from Judge Giddings. (Dkt. 1, Pl.'s Compl. at Ex. H.) Retaliation claims "rarely can be supported with direct evidence of intent." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005 (quoting *Murphy v. Lane*, 833 F.2d 106, 108

11

(7th Cir. 1987)). Circumstantial evidence is, therefore, not only appropriate, but necessary in some cases, to analyze when determining whether a genuine issue of material fact exists. *Thaddeus-X*, 175 F.3d at 399.

Another form of circumstantial evidence that supports Plaintiff's claim is the temporal proximity between his complaint to the Warden's Forum, and the three Major Misconduct tickets. The Sixth Circuit has extensively analyzed the role of temporal proximity in establishing a causal connection in retaliation claims. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-26 (6th Cir. 2008). Indeed, in *Mickey*, the Sixth Circuit seemed to reconcile "two seemingly divergent lines of cases" regarding temporal proximity into one cohesive rule. *Mosholder*, 2010 U.S. Dist. LEXIS 12386 at *32. The Court held that where an adverse action "occurs very close in time" after protected activity, "such temporal proximity between the events is enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey*, 516 F.3d at 525. However, "where some time lapses" between the events, the Plaintiff must "couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id*. (citations omitted).

Plaintiff's three Major Misconduct Tickets were all within 22 days of his Warden's Forum Complaint. (Dkt. 1, Pl.'s Compl.) This fact, coupled with the lack of evidential support for the tickets, as highlighted in Judge Giddings's decision – including the allegations that neither Defendant Belen nor Defendant Salisbury worked on the night of the alleged march, and therefore could not have witnessed any of the events that are detailed in their Major Misconduct Reports – create a genuine issue of material fact as to causation.

Defendants also state that "[e]ven assuming that Defendants are aware of Reeves' protected

conduct, Reeves retaliation claims against all Defendants would fail as they would have taken the same action even without the protected conduct." Thus, Defendants attempt to establish a legitimate, non-retaliatory reason for their actions – Plaintiff's alleged conduct in leading a march. *Thaddeus-X*, 175 F.3d at 399. The record does not support this argument. To the contrary, it suggests that the alleged "march" was a pretext for retaliation. *Id*. In his December 6, 2010 decision, Judge Giddings reversed MDOC's guilty finding on Plaintiff's Major Misconduct Ticket for Assault and Battery because it was "not supported by competent, material and substantial evidence on the whole record." (Dkt. 1, Pl.'s Compl. at Ex. B.) Indeed, Judge Giddings explicitly found that the "confidential information" upon which the Defendants relied to find Plaintiff guilty of Attempted Assault and Battery contained none of the testimony that the Defendants claimed it contained. (*Id*.) Given that Defendants' explanation for writing the Misconduct Tickets – that Plaintiff violated the disciplinary rules – is contradicted by other evidence in the record, and a state court finding that the alleged violation is "not supported by competent, material and substantial evidence on the whole record," the Court finds there is a genuine issue of material fact on the causation element that precludes the granting of Defendants' Motion for Summary Judgment.

### D. Defendants are Not Entitled to Qualified Immunity on Plaintiff's First and Fourteenth Amendment Claims

Defendants assert "that the issue of qualified immunity does not come into play because Reeves did not suffer a constitutional deprivation, or that they are entitled to a qualified immunity defense because their actions were objectively reasonable under the circumstances." (Dkt. 16, Def.s' Mot. Summ. J. at 20.) Neither argument is persuasive.

"The defense of qualified immunity shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

13

of which a reasonable person would have known.'" *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Moreover, qualified immunity is not only a defense to liability but also immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). And this protection applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 232 (internal quotation marks and citation omitted).

This Court makes the following two-part inquiry in determining qualified immunity: (1) whether a constitutional right has been violated, and (2) whether that right was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether a right is clearly established, the dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003) ("Qualified immunity will protect all but 'the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))). A court considers the alleged right "at a relatively high level of specificity." *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997). In particular,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As discussed above, a genuine issue of material fact exists regarding whether Plaintiff was deprived of his First Amendment rights. *Carter v. D. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich.

14

August 19, 2009) ("Once a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner" implicates First Amendment rights.). Moreover, the law is well established that the filing of false misconduct tickets can be the basis of a First Amendment retaliation claim. *King v. Zamiara,* 150 Fed. App'x 485, 493-94 (6th Cir. 2005); *see also Thomas v. Eby,* 481 F.3d 434, 441 (6th Cir. 2007) ("Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets."); *Muhammad v. Close*, No. 98-10153, 2011 U.S. Dist. LEXIS 73700, *3 (E.D. Mich. July 8, 2011) (rejecting the qualified immunity defense on a retaliation case at the summary judgment stage because "[a]t the summary judgment stage 'a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case.") (citing *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 722-23 (6th Cir. 2011) (quoting *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002)). Therefore, Defendants are not entitled to qualified immunity for damages arising from Plaintiff's retaliation claim.

With regard to Plaintiff's due process claim, Defendants simply state that "a prisoner does not have a liberty interest in his placement in administrative segregation." (Dkt. 16, Def.s' Mot. Summ. J. at 17.) Defendants ignore, however, that Plaintiff alleges a violation of procedural due process rights. Although Plaintiff complains about his placement in administrative segregation in his Complaint, he also complains about his lack of access to witnesses and testimony arising out of his Major Misconduct Hearing. Plaintiff asserts that his inability to confront the witnesses against him and review the "confidential" file violated his due process rights. Because Defendants do not

address this issue, their request for qualified immunity with regard to Plaintiff's due process claims should be denied.[3]

### E. Defendants are Entitled to Summary Judgment as to Plaintiff's Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. Eighth Amendment claims have an "objective component" (i.e., "was the deprivation sufficiently serious?") and a "subjective component" (i.e., "did the officials act with a sufficiently culpable state of mind?"). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires that "the deprivation alleged must be . . . 'sufficiently serious,'" which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Stated differently, a violation of Eighth Amendment rights will be found only when a prisoner is deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

Plaintiff's Eighth Amendment claim fails on this component alone. His claim is premised on being placed in segregation. But the Sixth Circuit has held that "placement in segregation is a routine discomfort" of prison life. *Rhodes v. Champman*, 452 U.S. 337, 347, 69 L.Ed. 2d 59, 101 S. Ct. 2392 (19810); *Hudson v. McMillon*, 503 U.S. 1, 9, 117 L.Ed. 2d 156, 112 S. Ct. 995 (1992); *Jones v. Waller,* No. 98-5739, 1999 U.S. App. LEXIS 8734, at *4 (table) (6th Cir. May 4, 1999)

---

[3] This Court notes that the Fifth Amendment provides that no person should be deprived of life, liberty, or property by the federal government "without due process of law." U.S. Const. amend V. The Fourteenth Amendment reaffirmed this right and explicitly applied it to the states. U.S. Const. amend. XIV. The proper Constitutional Amendment for Plaintiff's due process claims is the Fourteenth Amendment.

("Because placement in segregation is a routine discomfort that is a 'part of the penalty that criminal offenders pay for their offenses against society,' it is insufficient to support an Eighth Amendment claim.").

As such, this Court recommends that Defendants' Motion for Summary Judgment be granted as to Plaintiff's Eighth Amendment claims.

### III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Defendants' Motion for Summary Judgment (Dkt. 16) be GRANTED in part and DENIED in part. Specifically, the Court RECOMMENDS that the Motion be GRANTED as to Plaintiff's Eighth Amendment Claims and DENIED as to Plaintiff's First Amendment and Fourteenth Amendment claims.

### IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an

objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                s/Laurie J. Michelson  
                                                LAURIE J. MICHELSON  
                                                UNITED STATES MAGISTRATE JUDGE

Dated: January 30, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 30, 2012.

                                                s/Jane Johnson  
                                                Deputy Clerk